Emil H. MOSCHKAU, Plaintiff-Appellant,
v.
SEARS, ROEBUCK AND COMPANY, a
Foreign Corporation, Defendant-
Appellee.
No. 12980.

United States Court of Appeals
Seventh Circuit.
Oct. 12, 1960.

Vernon Molbreak, Madison, Wis., for appellant.

D. V. W. Beckwith, Madison, Wis., for appellee.

Before HASTINGS, Chief Judge, and DUFFY and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

Emil H. Moschkau sued to recover damages for burns sustained by him while using a plastic laminate adhesive out of the original pint-sized can container purchased from the store of Sears, Roebuck and Company in Madison, Wisconsin. The District Court reserved his ruling on defendant's motion, at the close of evidence, for a directed verdict in defendant's favor. The motion was based on the ground that the evidence disclosed no negligence on the part of Sears, but did show that Mr. Moschkau's negligence was the sole contributory cause of the accident. The District Court allowed the case to go to the jury. This was a sound practice to follow, as it now gives this Court a complete record of a full trial.

The jury found (1) that Sears had been negligent in giving inadequate warning of danger, and instructions for use, on the container of the adhesive; (2) that Mr. Moschkau was negligent in reading the warning and instructions on the container, but not in the way he used the adhesive; and (3) that the comparative negligence was: Sears—80% and Mr. Moschkau—20%.

The District Court found no credible evidence to support a finding: (1) that Sears was negligent in labeling the container, (2) that the type of warning was

a cause of the accident, or (3) that Mr. Moschkau's own negligence was not the sole cause of the accident. Plaintiff takes this appeal from judgment entered for Sears notwithstanding the verdict of the jury.

The evidence showed that Mr. Moschkau, who had been a carpenter for many years, had been building a cabinet for the gas oven in the kitchen of his friend and next-door neighbor, Richard O'Leary. Mr. Moschkau was going to put a piece of plastic laminate on the wall behind the gas stove, which was next to the gas oven, in the south end of the kitchen. The gas stove was about two and one-half feet wide and stood about one foot away from the wall. Mr. O'Leary had bought the plastic laminate and the can of plastic laminate adhesive at Sears.

It was about 7:30 of a quiet evening; the temperature was about 80 degrees; the kitchen windows were open, the kitchen doors to the breezeway and to the living room were open; the front door of the living room was open. Mr. Moschkau testified that he laid the laminate on the kitchen table. The table was about six feet north of the stove, nearer to the west rather than the east wall of the kitchen. Mr. Moschkau then opened the can of adhesive. He read and understood a warning in ⅛ inch red letters near the top of the container which read: "Caution: Inflammable Mixture. Do Not Use Near Fire or Flame." He testified that he did not read the rest of the label which included instructions in black lettering of less than 1/16 inch, or an admonition at the bottom of the container in 1/16 inch black letters: "Use in a Well Ventilated Area. Do Not Smoke, Extinguish All Flames Including Pilot Lights.", because he knew how to put the adhesive on. Plaintiff testified that after he had painted the laminate sheet with the adhesive, and left it on the table, he held the container of adhesive in his left hand, at his left shoulder, as he reached across with the brush in his right hand to paint the adhesive on the wall behind and above the gas stove. He said that he had not held the can over the stove. Mr. O'Leary,

who was present, testified that the can was held about eighteen inches above the burners on the stove, and that Mr. Moschkau had painted the plastic laminate adhesive over about two-thirds of an area which was three to four feet wide and two and one-half to three feet high, when the fire occurred. Mr. Moschkau testified that he had brushed the wall only once or twice, and stepped back to speak to Mr. O'Leary about an electric switch on the wall. At this point Mr. Moschkau's young son had run across the woolen rug of the living room into the kitchen and had clasped Mr. Moschkau about the knees. Mr. Moschkau testified that there was a sudden "bang" followed by instantaneous fire. Mr. O'Leary testified that there was a "puff" followed by flames on the wall and over the stove, and then the adhesive on the table also caught fire. The contents of the can in Mr. Moschkau's hand had splashed on the floor and burned there. Mr. Moschkau found himself aflame. As he started to carry the can out of the kitchen, he struck the edge of the door and splashed adhesive on himself.

Plaintiff's expert witness testified that the fumes of the adhesive could have been ignited by a static spark. Sears' expert witness thought that a static spark causation was unlikely and improbable because of the high humidity. Plaintiff's expert witness suggested two possible sources of such a spark: (1) The refrigerator motor which is housed next to the floor. The refrigerator was on the east wall of the kitchen, not as far from the stove as the table, but on the other side of the door to the breezeway and the stairs to the basement, both of which are on the east wall; and (2) The action of plaintiff's small son who walked across the woolen rug to clasp his father about the knees. There was no evidence of any actual spark. Plaintiff's burns were confined to his face, neck, left hand and arm, and the upper part of his chest, according to the testimony of his physician. The child was not burned. Neither was Mr. O'Leary although some of the adhesive splashed on him. The vapors of this ad-

hesive are heavier than air, and, in evaporating, they tend to go downward. If these were ignited by a static spark in the manner conjectured by plaintiff's expert witness, the fire would have occurred in the vicinity of that spark. As indicated, plaintiff's burns were confined to his upper body. Plaintiff's expert witness also testified that if the can had been about fourteen inches above the pilot lights on the gas stove and Mr. Moschkau had been reaching over, painting the wall back of the stove, that could well have caused the fire.

Plaintiff did testify that he had read the red lettered warning quoted above. He knew he was working near a gas stove. The fire started over the stove, although plaintiff walked away from the stove carrying some of the fire with him.

The issue here was whether there had been credible evidence to support a finding that Sears was causally negligent in its warning. Mr. Moschkau had been warned against using the product near a flame. He testified that he did not check to see whether the pilot lights in the gas stove were burning. Plaintiff contends that there was no direct evidence that the two pilot lights were burning, that neither could be seen from above because of the shield cups over them. There was a conflict in the testimony of plaintiff and that of Mr. O'Leary as to whether they had discussed the pilot lights before the accident, and as to whether Mr. Moschkau had expressed regrets, when Mr. O'Leary visited him in the hospital, that the pilot lights had not been extinguished before he used the adhesive. However, there is no doubt that Mr. Moschkau did not check the lights, although he was admittedly concerned about an electrical switch on the wall.

Evidence adduced at the trial included containers of comparable adhesives which carried warnings similar to that used here, and testimony that the warn-

ing conformed to that specified by the National Fire Protection organization and the New York Fire Department. Thus, judged by the usual standards, the warning used here cannot be said to be obviously negligent. Yaun v. Allis-Chalmers Mfg. Co., 1948, 253 Wis. 558, 567, 34 N.W.2d 853, 858.

In Bloom v. Gimbel Brothers, Inc., Sup.1955, 147 N.Y.S.2d 843, 845 a liquid floor polish ignited. The plaintiff there contended that the warning was inadequate. It read: "Caution. Inflammable Mixture. Keep Away From Open Flame." The New York City Administrative Code, § C19–59.0, required the warning: "Caution—Inflammable Mixture. Do Not Use Near Fire or Flame." The Court there held that the plaintiff was sufficiently aware of the risks. That case also involved a pilot light in a gas stove which the Court said seemed to have ignited the vapors from the product.[1]

Plaintiff contends that Sears' duty was to exercise reasonable care to inform those who used the adhesive of the dangers peculiarly within Sears' knowledge and to warn with a degree of intensity that would cause a reasonable man to exercise for his own safety the caution commensurate with the potential danger, considering that this was a product with a flash point of five degrees below zero. Plaintiff considers that Bloom is distinguished because the product there had a a flash point of only 70 degrees Fahrenheit. We do not believe that factor is a controlling distinction.

Plaintiff relies on Maize v. Atlantic Refining Co., 1945, 352 Pa. 51, 41 A.2d 850, 853, 160 A.L.R. 449, and Tampa Drug Co. v. Wait, Fla.1958, 103 So.2d 603, 605. Both involved cleaning fluids. In each case inhalation of fumes proved fatal. In the Maize case, the warning read: "Do not inhale fumes; use only in well ventilated place." The Court par-

---

1. A new trial was granted by the Appellate Division because adequacy of the warning label did not determine the whole issue of liability. There remained the question of a breach of warranty based on knowledge of the use plaintiff would make of the product. 1960, 10 A. D.2d 695, 198 N.Y.S.2d 52. That issue does not arise here.

ticularly noted (at page 852) that the conspicuous display, on each of the four sides of the can, of the words "Safety-Kleen" would lull the user into a false sense of security. In the Tampa case, there was a warning to: " 'Use with adequate ventilation—Avoid prolonged or repeated breathing of vapor.' " The Court found that saturation of the circulatory system with the toxic vapors resulted in complete deterioration of the kidneys and liver. There was no clear indication on either label that the fumes were poisonous. The adhesive in the case before us was labeled as inflammable and as not to be used near fire or flame. Plaintiff read that label but used the product contrary to the warning with the precise result against which he had been cautioned.

Study of the record here constrains us to agree with the Trial Judge that plaintiff's injuries resulted from his wrongful use of the product and not from any defect in the warnings against use near a flame. All arguments advanced by the parties have been considered but lead to no other conclusion. The judgment of the District Court is affirmed.