Frank **BOROWICZ**, Plaintiff-Appellee,

v.

**CHICAGO MASTIC COMPANY**,
Defendant-Appellant.

Frank **BOROWICZ**, Plaintiff-Appellee,

v.

**CHICAGO ADHESIVE PRODUCTS COMPANY**, Defendant-Appellant.

Nos. 15407–15408.

United States Court of Appeals
Seventh Circuit.

Sept. 20, 1966.

Caryl P. Bonotto, Howard T. Brinton, John M. O'Connor, Jr., of Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for Chicago Adhesive Products Co.

Gordon R. Close, Jay M. Smyser, Thomas W. Dempsey, of Lord, Bissell & Brook, Chicago, Ill., for Chicago Mastic Co.

Michael H. Postilion, Roger F. Maritote, Peter Fitzpatrick, Chicago, Ill., for plaintiff-appellee; Fitzpatrick Postilion, Zegiel & Heinemann, Chicago, Ill., of counsel.

Before HASTINGS, Chief Judge, and SWYGERT, Circuit Judge, and GRANT, District Judge.

GRANT, District Judge.

Plaintiff brought these diversity actions to recover damages for personal injuries sustained by him from a flash fire that occurred while using a can of adhesive cement. The defendant, Chicago Mastic Company (Mastic), manufactured this "No. 2020 contact cement" and sold it in 55-gallon drums to defendant, Chicago Adhesive Products Company. Chicago Adhesive, which was itself in the business of manufacturing and selling adhesive cement, repackaged, sold and distributed the product in one-gallon cans and affixed its own label, indicating that it, Chicago Adhesive, was the manufacturer and calling the repack-

aged product Chapco No. 802 Contact Bond Cement.

Plaintiff alleged negligence, breach of express warranties, and fraud against both defendants. The trial court dismissed the warranty count against the original manufacturer, defendant Mastic, and submitted the case to the jury (on the sole issue of liability) on all remaining counts.

Following the jury's general verdict against both defendants (and a subsequent and separate trial awarding damages to plaintiff in the sum of $20,000.-00) judgment was entered thereon, from which each defendant brings this appeal. The errors relied upon arise out of the refusal of the court to direct a verdict for each defendant on all counts and the refusal of the court to grant post trial motions for judgment notwithstanding the verdict or, in the alternative, for a new trial.

We conclude that the trial court erred in failing to grant the defendants' respective motions for a directed verdict. This case, on the following factual situation and under the applicable law, should not have been submitted to the jury.

The evidence may be summarized as follows:

Plaintiff Borowicz testified he had been a carpenter for about 50 years. On August 30, 1960, he was engaged in doing some remodeling in the kitchen of the Moser home in Buffalo, New York. He and his employee, Walter Bar, had been at the job for about a week and a half. Their work included the construction of a 16-foot length of base cabinet along the south wall, extending 18 inches around on the east wall in the shape of an "L", with formica to be cemented to the plywood countertop. That 16' x 13' kitchen had three doors leading to other parts of the house, and one door leading to a hallway towards the outside yard. Windows in those connecting rooms of the house were open and

a new kitchen window on the south wall of the kitchen had been installed and was open.

Plaintiff further testified that the kitchen stove was on the east wall up against the base cupboards, that he didn't remember where the refrigerator was in the kitchen, and that he didn't see it. They had worked on the kitchen cupboards that day from 8:00 A.M. until 2:30 P.M., when the accident occurred. Work on the long counter, a one-piece solid top of plywood 16' long and 26" wide, was done in the garage and brought into the kitchen "after dinner". It was placed on the floor, one end extending through the parlor door at the west end of the kitchen, the other end being close to the gas stove. Plaintiff testified that he was working with the formica paste about three feet from that stove.

Plaintiff wore his regular leather shoes with hobnailed soles. There was a steel tape on the edge of the linoleum in the center of the floor. It was not covered by the plywood countertop but was about three feet away from the plywood.

Plaintiff did not examine the kitchen stove at all, nor did he tell his employee, Walter Bar, to do so. He admitted that in his earlier deposition he was asked, "Well, was the gas stove turned on, if you know?" and that he had replied, "I don't even know about that."

Plaintiff further testified that he had purchased the gallon can of Chapco contact cement from a Buffalo, N. Y. retailer early the day of the accident. He did not ask for Chapco, only asking for contact paste for formica. He had used the Chapco paste eight or more times before and had read the label on each occasion and also on the day of the accident. He knew from reading the label that if he used the cement near fire that it would catch fire.

The plaintiff neither alleged nor proved that the mastic cement was itself defective or negligently manufactured. The case turned exclusively on the adequacy of the warnings present on the label. In evidence as plaintiff's Exhibit No. 1, the pertinent part thereof is as follows:

## Chapco #802 Contact Bond Cement

CAUTION: Flammable mixture. Do not use near fire or flame.
N.Y.F.D. C. of A. No. 2360

Chapco Contact Cement is designed for contact bonding of plastic laminates to desks, tables, countertops, etc. Chapco Contact Cement requires NO CLAMPING OR HEAT CURING; contact pressure alone completes the bond. Also for bonding rubber, leather, metals, linoleum, pressed wood, wallboard, masonry, plaster, etc., and other porous and non-porous materials to themselves and to each other. Chapco Contact Cement is resistant to oxidation, heat, water, grease and oil.

Coverage 200 to 250 sq. ft. per gallon.

### DIRECTIONS

Stir thoroughly before using.

Apply only to CLEAN and DRY surfaces.

Temperature of cement, surfaces and room should be 65°F. or higher.

Apply to BOTH surfaces to be bonded with clean paint brush, mohair type paint roller, or Chapco notched spreader. DO NOT RISK FAILURES BY APPLYING TOO LITTLE CEMENT. Porous surfaces require 2 or more uniform coats. Allow first coat to dry completely before applying the second coat.

When DRY, the cement will have aggressive tack to the touch but will not transfer to the finger. Under normal conditions cement will dry in 10 to 20 minutes—high humidity retards drying.

Positive test for SUFFICIENT CEMENT is a uniform glossy film upon drying. Dull spots indicate the need for a second coat.

Surfaces may be bonded immediately after cement is dry or up to 6 hours later. If stronger INITIAL bond is desired, delay completing the lamination (up to 6 hours) after spreading.

Join the surfaces carefully in the EXACT POSITION required. ONCE CONTACT IS MADE, REPOSITIONING IS IMPOSSIBLE.

APPLY PRESSURE to the laminate, uniformly and thoroughly to every square inch of bonded area, using a 3" wide roller or rubber mallet. Sustained pressure is not required. Laminates may be cut, trimmed, etc., immediately after bonding.

To remove Chapco Contact Cement and to clean tools use Chapco 812 Cleaner only. Gasoline, turpentine, etc., will not remove this cement.

SPECIAL CAUTION: Chapco Contact Cement is no more hazardous than paints, lacquers, dry cleaning fluids or gasoline, so these simple rules should be followed: Work in well ventilated area; DO NOT SMOKE; avoid prolonged contact with the skin; avoid breathing vapors. WARNING: Extinguish all fires and flames, avoid sparking by turning off all electric motors.

CAUTION: Keep containers tightly sealed when not in use. Store at temperatures below 100°F. If stored below 40°F. the cement will thicken. Although thickened cement will not affect bonding properties, it will be more workable when brought back to room temperature.

WARRANTY—This product is compounded of quality controlled material by experienced personnel. Guarantee is limited to the value of the material used.

**CHICAGO ADHESIVE PRODUCTS CO.**
12110 S. PEORIA ST.    CHICAGO 43, ILLINOIS

Plaintiff further stated that he opened the can of Chapco cement and poured either one-half gallon or a full gallon onto the plywood. He and his employee next proceeded, from a kneeling position, to spread the cement over the plywood with a metal trowel. Walter Bar worked on the westerly portion and plaintiff, the easterly portion—that portion nearer the gas stove. Plaintiff stood up, to move along the plywood, and took one or two steps when there was an explosion, "like a puff", and the flash fire occurred which caused the plaintiff's injuries.

Plaintiff's employee, Walter Bar, a carpenter with some 35 years' experience, testified that the east end of the plywood was on the floor and very close to the stove, probably as close as one inch or two from the stove; that there was an electric refrigerator on the north wall of the kitchen and that it was plugged in and operating and in use. He also stated that Mrs. Moser, the housewife, made coffee throughout the day on the gas stove and gave him coffee about every hour on the hour during that day; that at the time of the fire, the coffee pot was on the stove, but the burner was not lit. To the best of his knowledge, no one turned out the pilot light. After the explosion, he first smelled gas and asked Mrs. Moser to look to see if the pilot light was off. Looking up from his kneeling position, he saw flames coming "toward me". Borowicz was standing next to the stove, his pants on fire. According to Bar, the fire evidently started next to the stove, the whole room suddenly filling with black smoke. It seemed to him that only the mastic burned and that the open mastic can was three feet, more or less, from the stove.

The housewife, Mrs. Moser, testified she had made coffee on the kitchen gas stove at various times on the day of the accident, and that at those times the stove was in operation and the pilot light was lit. No one disconnected the pilot light to her knowledge.

According to her testimony, the electric refrigerator was functioning before and after the accident, though she was out of the house when the fire occurred.

Expert witness Brown, a chemist, tested the cement, stated its flash point was similar to that found in ordinary gasoline. He spoke of "relative probabilities" but said that he had not been given enough information to give an unequivocal answer as to how the fire might have started. He thought no one could pin down the cause of this fire and would admit the possibility that it might have started somewhere else, and then transferred to the mastic, and that the mastic had nothing to do with it. He discussed the refrigerator motor, the pilot lights, and the possibility of sparks from friction, but was not inclined to rule out anything as absolutely impossible. In his opinion, the warning on the label was inadequate because it did not clearly convey that the warning was to be taken seriously. He knew of no product of this type which had more prominent labeling in connection with fire hazards, but thought the entire industry was subject to criticism.

Expert witness Krawetz, another chemist, also tested the cement. He determined that it was a flammable mixture and that it would burn if used near fire or flame. It was his opinion that the vapors from the cement could certainly be ignited by the flame from an ordinary gas stove.

Plaintiff here has claimed that use of the label constituted negligence and fraud in two respects, in that the following language within the text of the label caused him to believe that the cement was "safe", not dangerous:

1. "N.Y.F.D.C. of A. No. 2360"

2. "Chapco Contact Cement is no more hazardous than paints, lacquers, dry cleaning fluids or gasoline * * "

He also claimed that these statements were express warranties which were

breached by the defendant, Chicago Adhesive Products Company.

The initials in No. 1 above are an abbreviation for "New York Fire Department Certificate of Approval No. 2360", and purport to show that the manufacturer of the product has submitted his flammable product to the New York City Fire Department where tests were made to determine that the product is properly labeled. An ordinance of the City of New York required these tests before a manufacturer is permitted to so identify his product and sell it in New York City. There is no evidence here that this product did not meet those New York City labeling requirements.

It may be noted, at this juncture, that defendant Mastic had, in connection with its first sale of the product to defendant Adhesive, sent along a sample of the Mastic label and gave permission to copy from it. Chicago Adhesive did not copy all of the warnings on the Mastic label, but, generally speaking, did copy the Mastic label, including the language, "N.Y.F. D.C. of A. No. 2360". The principal change in the label deleted any reference to Mastic and substituted Adhesive as the manufacturer. There was no suggestion that plaintiff ever saw the broader labels used by the original manufacturer, defendant Mastic.

It developed at the trial that defendant Mastic had not, in fact, submitted this particular product to the New York City Fire Department for testing. However, Mastic had used the same legend, "N.Y. F.D.C. of A. No. 2360" on labels of its other flammable products, indicating that those products had been assigned that Certificate by the Department. Although the defendant sought to show the misunderstanding that existed as to whether these New York City tests had or had not previously been made, we do not find the fact of non-testing to be material to the questions here decided. There was some evidence that the label did meet the requirements of that New York City Ordinance but we are not here concerned with a sale in the City of New York.

There was no suggestion in the evidence that the N.Y.F.D. legend was used on the label to deceive the plaintiff or to induce him to purchase the cement. Although plaintiff testified that he did rely on the N.Y.F.D. legend and that to him it meant that the product was "safe" and could not catch fire and he would not buy a product that did not have the N.Y.F.D. legend on it, nonetheless, all the evidence in this case, taken most favorably to the plaintiff, does not even suggest that he was justified in relying upon that legend, lifted out from the context of that label. This reasoning applies with equal force to the second of the alleged misrepresentations, which asserts that the Mastic is "no more hazardous than" a number of other flammable products. Either standing alone or taken together, these statements can in no way be interpreted as misleading, especially in regard to this particular plaintiff.

■ An experienced carpenter who had read this label and used this product before, and who read and understood the label again on the day in question, who thereupon proceeds to use the product as here, not even knowing whether or not there was an electric refrigerator motor operating in the kitchen, and who did not examine the gas stove to see whether it was burning, or the pilot light was lit, and who knowingly uses this product within an admitted three feet from a gas stove, is himself negligent as a matter of law and his injuries were proximately caused by his own negligence.

■ Plaintiff had read this label at least eight times previously and it needs to be read as a whole. He may not now lift certain words or phrases out of the context of that familiar label, and thereby seek to impose liability on the manufacturer for injuries occasioned by his own negligence. See Bender v. William Cooper & Nephews, Inc., 323 Ill.App. 96, 55 N.E.2d 94. In *Bender* the plaintiff claimed negligence because of some "safe and non-irritating" language on the label of a can of disinfectant. In pointing out that the plaintiff cannot select isolated language from the label, excluding all

other warnings given therein, the Court said:

"The weakness of plaintiff's case is that she takes from the label a few words and bases her claim upon these words, ignoring all other statements on the label. She claims that she had a right under the law to rely upon these words and had a right to assume that the words applied to the liquid undiluted. It will be noted that the words upon which plaintiff relies are not set out in large or bold-faced type nor in a manner that would call special attention to them. What defendant represented as to the undiluted disinfectant must be gathered from an examination of the entire label." 55 N.E.2d at 96.

See also Carmen v. Eli Lilly & Co., 109 Ind.App. 76, 32 N.E.2d 729; Vibra Brush Corp. v. Schaffer, 152 F.Supp. 461 (S.D. N.Y.1957).

In Dittmar v. Ahern, 37 Ill.App.2d 167, 185 N.E.2d 264, that Court, in a comparable situation, pointed out that the words which plaintiff sought to isolate from the context and rely upon were not set out in a manner which would call special attention to them. The Court in Dittmar then said:

"* * * When a manufacturer provides instructions for the use of his product, and these instructions are deliberately not followed, we cannot see how the manufacturer can be held liable for damages on the grounds that he did not provide proper instructions." 185 N.E.2d at 268.

This Court was previously presented with an almost identical factual situation in Moschkau v. Sears, Roebuck & Co., 282 F.2d 878 (7th Cir. 1960). That case, as here, turned on the adequacy of the warning on that label on a pint can of plastic laminate adhesive. A comparison of the texts of the warnings on the labels in *Moschkau* and the case before us follows:

| MOSCHKAU LABEL | BOROWICZ LABEL |
|---|---|
| CAUTION: Inflammable Mixture. Do Not Use Near Fire or Flame. | CAUTION: Flammable Mixture. Do Not Use Near Fire or Flame. |
| * * * | * * * |
| Use in Well Ventilated Area. Do Not Smoke, Extinguish All Flames Including Pilot Lights. | WARNING: Extinguish All Fires and Flames, Avoid Sparking by Turning Off All Electric Motors. |

There, as here, the plaintiff, an experienced carpenter, read and understood the warning. He did not read the rest of the label because he knew how to put the adhesive on. There, as here, plaintiff did not check to see whether the pilot lights in the gas stove were burning. Nevertheless, he proceeded to use the product in the immediate vicinity of the kitchen gas stove. There, as here, the plaintiff failed to prove the cause of the fire but, instead, suggested the same three possibilities: (1) the pilot light, (2) sparks from the electric refrigerator motor in the room, or (3) frictional sparks. This Court, in *Moschkau*, stated that "the is-sue here was whether there had been credible evidence to support a finding that Sears was causally negligent in its warning," and then concluded by answering that question in the following language:

"* * * The adhesive in the case before us was labeled as inflammable and as not to be used near fire or flame. Plaintiff read that label but used the product contrary to the warning with the precise result against which he had been cautioned.

Study of the record here constrains us to agree with the Trial Judge that

plaintiff's injuries resulted from his wrongful use of the product and not from any defect in the warnings against use near a flame." 282 F.2d at 881.

We apply that language again to the case now before us.

■ Plaintiff here knew this product. He had read that label at least eight times before and he understood it. He knew that the adhesive would catch fire if used near fire. There could, in such a case, be no duty to warn him against possible consequences about which he already knew because knowledge of the danger is equivalent to prior notice. No one needs notice of that which he already knows.[1] In such a view, it would not even be necessary to determine here the adequacy of the warning label. McDaniel v. Williams, 23 A.D.2d 729, 257 N.Y.S.2d 702; Howard Stores Corporation v. Pope, 1 N.Y. 2d 110, 115, 150 N.Y.S.2d 792, 134 N.E. 2d 63. See also Stevens v. Durbin-Durco, 377 S.W.2d 343, 347 (Mo., 1964); Morrocco v. Northwest Engineering Company, 310 F.2d 809 (6th Cir., 1962); Moore v. Jefferson Distilling & Denaturing Company, 169 La. 1156, 126 So. 691; Parker v. Heasler Plumbing & Heating Co., 388 P.2d 516, 518–519 (Wyo., 1964). This knowledgeable plaintiff has thus failed to show that defendant violated any duty to warn him against a danger of which he already had knowledge.

■■ Further, there is no evidence in this record that would meet plaintiff's burden in the area of proximate cause. That burden includes showing the cause of the fire together with defendants' connection to that cause. Halsey v. Ford Motor Co., 24 A.D.2d 826, 264 N.Y.S.2d 16; Wragge v. Lizza Asphalt Construction Co., 23 A.D.2d 778, 258 N.Y.S.2d 557; White v. Lehigh Valley R. R. Co., 220 N.Y. 131, 115 N.E. 439. A discourse by an expert witness on the several possibilities as to the beginning of that fire, who could not conclude with his expert opinion as to the cause of that fire does not meet plaintiff's burden of showing that negligence on the part of these defendants caused the fire.

In Halsey v. Ford Motor Co., 264 N.Y.S.2d 16, 17, the Court held:

"Plaintiff's recovery is based upon a jury finding of breach of implied warranty of fitness of a cigarette lighter sold by defendants as an integral part of an automobile. The car was destroyed by fire after having been left unattended in a rural area. There was some proof that upon first discovery of the fire it was concentrated on the dash where the lighter was located. There is also proof that in the five months' plaintiff had owned the car the lighter had malfunctioned but such had only occurred when the article was used. There is no proof that on the day in question it had been so used. Giving plaintiff the benefit of every favorable inference which can reasonably be drawn from the facts (Sagorsky v. Malyon, 307 N.Y. 584, 586, 123 N.E.2d 79, 80) we conclude that the trial court upon the proof adduced erred in submitting the issues to the jury. *'When the precise cause of an accident is left to conjecture and may be as reasonably attributed to a condition for which no liability attaches as to one for which it does, then the plaintiff is not entitled to recover, and the evidence should not be submitted to the jury.'* (White v. Lehigh Valley R. R. Co., 220 N.Y. 131, 135, 136, 115 N.E. 439, 441.)" (Emphasis supplied.)

We conclude this discussion of the negligence count by holding that there was no evidence of negligence on the part of either of these defendants and, further, that all the evidence pointed to the inescapable conclusion that plaintiff's injuries resulted from his own negligence and from his misuse of the product, and in violation of the known warnings on the label. In our opinion, Moschkau v. Sears, Roebuck & Co., supra, effectively supports and sustains this holding.

---

[1]. See the lengthy discussion on 'foreseeability' of injury to users of products in Jamieson v. Woodward & Lothrop, 101 U.S.App.D.C. 32, 247 F.2d 23 (1957) cert. den. 355 U.S. 855, 78 S.Ct. 84, 2 L.Ed.2d 63.

What we have said above on the element of proximate cause would apply equally to the counts on fraud and on express warranty.

█ Under the applicable New York law,[2] the following elements must be established before liability on the theory of express warranty can be imposed on the defendant, Chicago Adhesive:

1. An affirmation of fact or a promise by the seller;

2. That the natural tendency of said affirmation or promise was to induce the buyer to purchase the goods;

3. That the buyer purchased the goods in reliance thereon;

4. A breach of the express warranty by the seller;

5. Said breach proximately causing injury to the plaintiff.

Fredendall v. Abraham and Straus, 279 N.Y. 146, 18 N.E.2d 11; Natale v. Pepsi Cola Company, 7 A.D.2d 282, 182 N.Y.S. 2d 404; Ellen v. Heacock, 247 App.Div. 476, 286 N.Y.S.2d 740.

█ If we assume, for the purpose of this discussion, that the two accused statements, "N.Y.F.D.C. of A. No. 2360", and "Chapco Contact Cement is no more hazardous than paints, lacquers, dry cleaning fluids or gasoline * * *", lifted from the context of this label would meet the prerequisites in No. 1 and No. 2 above, still we find no credible evidence of any justifiable reliance thereon. The testimony of the plaintiff was that the legend, N.Y.F.D., induced him to buy the product and that such legend indicated to him that the product was "safe"; that it "could not catch fire because it had N.Y.F.D. on it." However, any reliance on the N.Y.F.D. legend which he now professes becomes unreasonable and unjustifiable in the light of all the evidence here, taken most favorably to plaintiff, including the purpose and the use of the N.Y. F.D. legend, and particularly in the light of his statements made during cross-examination, concerning his familiarity with the label.[3] There is nothing in his testimony suggestive of any reliance on the other language, "no more dangerous than paints, lacquers, dry cleaning fluids or gasoline," taken from the label.

In the light of his own testimony, we cannot accept plaintiff's purported reliance as being either credible or reasonable or justifiable. Cf. Rachlin v. Libby-Owens-Ford Glass Co., 96 F.2d 597 (2d Cir., 1938). Plaintiff there sought damages for personal injuries sustained from flying fragments of broken glass in an auto collision and charged the defendant "safety glass" manufacturer with falsely and fraudulently representing "that persons riding in automobiles equipped with

---

2. Section 12, Uniform Sales Act, adopted by the State of New York on September 1, 1911; § 93, Personal Property Law. The Uniform Commercial Code was not adopted in the State of New York until September 27, 1964—See Consol.Laws, Ch. 38, Sec. 1–101 et seq.

3. Those statements as they appear in the transcript are as follows:

"Q. Well, hadn't you used this paste eight or more times before?

The Court: By this paste, you mean Chapco 820?

Mr. Bonotto: Yes, sir.

The Court: Had you used Chapco 820 before, eight times or more?

The Witness: Yes, I was using.

Mr. Postilion: Your Honor, that is 802.

The Court: 802, I am sorry. Chapco 802 you had used before?

The Witness: 802, yes.

By Mr. Bonotto:

Q. And each time that you had used it, you had read the label, isn't that so, sir?

A. Yes. Right.

Q. And the label had a warning on it?

A. Yes, sir.

Q. And the label said not to use it near fire, didn't it?

A. Yes, sir.

Q. And you had read that?

A. Yes.

Q. And on the eight times when you had purchased this product before?

A. Yes.

Q. And you read it on the day you bought this can, you read these same instructions, didn't you?

A. Yes, sure.

Q. And you knew that if you got it near fire, if you used that paste near fire, you knew that it would catch fire?

A. Yes.

Q. Isn't that so, sir?

A. Yes, sir."

'safety glass' would thereby achieve freedom or exemption from injury from broken glass; * * * and (not) cause personal injury." Commenting on this reliance on the words of the advertisement, the Court said:

"The essential idea conveyed by the advertisements is that safety glass furnishes 'the greatest available protection' against injury from flying fragments of glass and that a purchaser who is not reckless will have his car so equipped throughout. No fair reading of the language can construe it as representing that safety glass is unbreakable or that no possible type of collision can cause it to fly about in dangerous fragments. Despite Mrs. Rachlin's testimony that the words 'safety glass' conveyed to her mind the impression that 'I would be safe and free from harm from flying glass,' the court could not have permitted the jury to find that the defendant had made such a representation." 96 F.2d at 599.

For reasons just stated, we do not believe there was any evidence, to go to this jury, of any breach of an express warranty by the defendant Adhesive, nor, of course, could any injury proximately ensue.

■■■ Nor was there any evidence that would have supported the essential elements of the count based on fraud. Fraud is not to be presumed, but must be affirmatively established by clear and convincing proof of each and every essential element. Freedman v. Norddeutscher Lloyd, 22 Misc.2d 397, 199 N.Y.S.2d 709, 711, aff'd App.Div., 209 N.Y.S.2d 766; Applebaum v. Applebaum, Sup., 84 N.Y.S.2d 505, 508; Uhlmann v. Hammons, Sup., 74 N.Y.S.2d 66, 67. Without unduly extending this opinion, we conclude here that there was no evidence offered that would suggest an intent to deceive, and, further, as we have pointed out above on the warranty count, there was no credible evidence of any justifiable reliance on the accused words taken from the labels. See Rachlin v.

Libby-Owens-Ford Glass Co., supra. More is required than plaintiff's own notions of the meaning of the words, whether it be the legend "N.Y.F.D." or "safety-glass" or "T.N.T." to justify reliance as the term is used here. The representation must be such as to mislead a reasonably cautious or prudent man. Taylor v. Heisinger, 39 Misc.2d 955, 242 N.Y.S.2d 281, 284. Gibbons v. Brandt, 170 F.2d 385, 391 (7th Cir., 1947). "To be remediable, a representation must have been of such a nature and made under such circumstances that the injured party had a right to rely on it." 37 C.J.S. Fraud § 30, p. 271.

Finally, there is here no proof of proximate cause. There is no showing of any causal relationship between the accused N.Y.F.D. legend and plaintiff's injuries. If, as noted above, the product had been tested by the New York City Fire Department, the label and the product would have remained the same. The fact that it had not been tested had nothing to do with the fire. There was no suggestion of a defective product nor was there any showing of any standard of care of the industry that may have been breached by this label. To repeat, all of the evidence herein points inescapably to the conclusion that plaintiff's own acts were the cause of this fire and his resultant injuries.

■■■ We are not unmindful of the injuries suffered by the plaintiff in this fire, but the premise of pecuniary liability for tort is not the mere fact of injury, but injury plus fault. It would be totally unreasonable to require that a manufacturer warn or protect against every injury which may ensue from mishap in the use of his product. Nor does the law require that an article be accident-proof or incapable of doing harm. We quote with approval from the lengthy opinion of the 5th Circuit in Jamieson v. Woodward & Lothrop, supra:

"It is urged that a contest of the sort here involved can just as well be submitted to a jury, without a prior determination of possible liability on the

part of the defendant. There is in some sociological circles a philosophy that the burden of damages suffered in accidents with manufactured articles ought to be widely spread, by way of the manufacturer and his available insurance, such as is the plan widely adopted in respect to injuries suffered in employment. But such a plan ought to be adopted, if it is to be adopted, by the voice of the people generally, expressed by the legislative branch of the government. It ought not be imposed by the judicial branch. To be sure, there are many respects in which the development of the common law calls for reexamination and change by the courts. The advances made by the courts in this very field by cases such as *Huset* [Huset v. J. I. Case Threshing Mach. Co., 8 Cir, 120 F. 865] and *MacPherson* [MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F. 696], supra, are illustrations. But so sweeping a change in commercial liability as the change just mentioned is not within that area. We must, when appropriate procedural demands have been made, determine at the outset of an action whether a possible liability in law of the defendant has been indicated by the plaintiff. This is a concept basic in our jurisprudence. It is established, firmly and correctly, that if a defendant has violated no legal obligation, his liability for pecuniary damages must not be submitted to the possible prejudices, sympathies or whims of a lay jury. His basic liability is first to be tested as a matter of law by the judge."

After a review of all of the evidence herein and when considered most favorably to the plaintiff, we hold there was not sufficient evidence to submit this case to a jury. We hold that the District Court erred in not directing verdicts for the defendants on each of the three counts of the complaint.

For these reasons, this cause is reversed with instructions to the District Court to enter judgment for the defendants.