[Civ. No. 17227.   First Dist., Div. Two.   July 29, 1957.]

NORA ARATA, Appellant, v. NORMA TONEGATO et al., Respondents.

Robert B. Bostwick, Jr., and Goldstein, Brann & Stern and Franklyn K. Brann for Appellant.

Wallace, Garrison, Norton & Ray and Carroll, Davis & Burdick for Respondents.

DOOLING, J.—Plaintiff, Nora Arata, appeals from the judgment entered on the verdict for defendants, Norma Tonegato and Clairol, Inc., a corporation. Plaintiff's complaint con-

tained five causes of action: two for negligence and one for breach of warranty against Clairol, Inc.; and a breach of warranty and a negligence count against Tonegato. Nonsuits were granted as to the first cause of action for negligence against Clairol, Inc., and as to both causes of action for breach of warranty. The case was submitted to the jury on the second and fifth causes of action: negligence of Clairol, Inc., through inadequate warning of the dangerous propensity of its product; and negligent application of the product by defendant Tonegato. After a verdict for the defendants, a motion for new trial was denied.

On June 16, 1953, appellant visited the Vidmar Beauty Salon owned and operated by respondent Tonegato. Appellant testified that she came to the shop for a "wash and set" and that respondent suggested she have her hair tinted. Respondent testified that appellant herself requested the tint.

The product used was "Miss Clairol," manufactured by respondent Clairol, Inc., which product contained not more than two percent paraphenylenediamine. The bottle containing this product had labeled directions and a pamphlet with instructions. The label on the bottle read: "Caution—This product contains ingredients which may cause skin irritation on certain individuals and a preliminary test according to accompanying directions should first be made. This product must not be used for dyeing the eyelashes or eyebrows; to do so may cause blindness." Both the bottle and the paper carton in which it was packed contain the words "Read enclosed directions before using." This caution on the label was the same as or substantially similar to those carried on all hair dyes on the market and is identical with the language prescribed by the Federal Food, Drug and Cosmetic Act.

The preliminary test or "patch test" involved the application to the bend of the elbow or behind the ear of a mixture in equal parts of the dye and hydrogen peroxide. This mixture is left on the skin for 24 hours to test for allergic reaction. Directions accompanying the product and describing the "patch test" have to be accepted by the Food, Drug and Cosmetic Bureau.

Appellant testified that the patch test was mentioned by respondent Tonegato who explained that it took 24 hours to determine whether there would be a reaction. Appellant further testified that at this time she told respondent to "just forget the tint" but that respondent assured her that "it isn't that bad" and that she herself had dyed her own hair without

the test. Respondent Tonegato testified that she described the possible reactions to the test and appellant wanted her hair tinted without bothering with the test.

A card was introduced into evidence reading "I, Nora Arata, will not hold the Vidmar Beauty Shop responsible for breakage on my skin or scalp." The name was in appellant's handwriting and the remaining words were in respondent's handwriting. Respondent testified that she wrote the note and had appellant insert her name because "I didn't want to be responsible." Appellant's testimony is that respondent gave her a blank card to sign and the other words were added later.

Appellant stated that she felt a stinging sensation as soon as the tint was applied and that she mentioned it to respondent, but respondent could not remember this. Appellant returned to the shop the next day and complained of a rash.

Appellant's condition grew worse with considerable swelling around the head and weeping or draining of the scalp. On the evening of June 17, 1953, appellant fainted and was hospitalized. After this the condition grew worse and appellant was hospitalized several times and incurred medical expenses amounting to $11,392.02. She underwent several operations including cutting of the occipital nerves to relieve the pain. Appellant claimed partial loss of vision, partial baldness, and inability to return to her job of owning and operating a gift shop.

Several doctors testified for both sides: those for appellant were of the opinion that she sustained a toxic reaction; those for respondents were of the opinion that she was highly sensitive or allergic to this product. There was evidence of a history of allergies given by appellant on admission to the hospital.

Appellant does not question the granting of a nonsuit as to the first cause of action.

Appellant contends that the nonsuit as to the causes of action for breach of warranty was erroneous because it should have been a question for the jury as to whether the facts were sufficient to constitute notice. Under appellant's theory the oral complaint of a rash plus the exhibiting of the affected portions of her head to respondent Tonegato was sufficient notice under Civil Code, section 1769.

This section provides in part:

"But, if, after acceptance of the goods, the buyer fails to

give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor.''

It is clear that appellant's actions could not constitute notice to respondent Clairol, Inc., and no indication was given to respondent Tonegato that appellant intended to file suit. Appellant's contention that the filing of the complaint was sufficient notice of the breach of warranty is not sound. Even assuming that the approximately 11-month period elapsing before the suit was filed was not an unreasonable time, the filing of the suit cannot constitute notice.

In *Vogel* v. *Thrifty Drug Co.*, 43 Cal.2d 184 [272 P.2d 1], the court held that notice must be *pleaded* and proved. The fact that the giving of notice must be pleaded obviously requires that it be given before filing suit.

Appellant contends that the charge to the jury contained several erroneous, conflicting and misleading instructions which constitute reversible error.

The first instruction objected to is Clairol's instruction number 22 which states:

''In weighing the defense of contributory negligence which has been pleaded by the defendants it is your duty to consider whether the plaintiff, Mrs. Arata, knew that she was allergic to various substances and whether she should have revealed this fact to the defendant Norma Tonegato. In considering this defense it is also your duty to consider whether the plaintiff herself elected not to take the patch test. If after weighing these matters and all other evidence having to do with this subject you should find that the plaintiff herself was negligent in connection with her receiving the hair coloring treatment and that this negligence contributed in any degree to cause her illness, injuries, or disabilities, if any, then the plaintiff cannot recover.''

Appellant contends this instruction is erroneous in that it gives undue prominence to appellant's allergies and to whether respondent Tonegato should have been informed of these allergies. The instruction to the jurors that it was their duty to consider whether the appellant herself elected not to take the patch test is also cited as error. Appellant also contends that the evidence was insufficient to support the giving of instructions on contributory negligence.

There was ample evidence to support a finding of contributory negligence. Respondent Tonegato testified that she

informed appellant of the patch test and its purpose to test an allergic reaction and described the possible allergic reaction and appellant refused the test. Appellant had allergic reactions prior to this time as indicated by hospital records and her admissions. A card "releasing" respondent Tonegato from responsibility was introduced. This evidence is adequate to raise the issue of contributory negligence.

While it may be error to unduly overemphasize issues the questions of appellant's knowledge of her allergies, whether she should have revealed this to respondent, and whether she herself elected not to take the patch test were vital issues to be decided in determining whether or not appellant was contributively negligent. It cannot be held to be error for the court to indicate specifically these questions. The court generally instructed as to the requirements for a finding of contributory negligence. This included an instruction that any negligence of appellant must contribute in some degree as a proximate cause of the injury. In instruction 22 the court also referred to "weighing these matters and all other evidence having to do with this subject . . ."

Appellant objects to respondent Tonegato's instruction which stated: "the burden is upon the plaintiff, Mrs. Arata, to prove by a preponderance of the evidence that defendant Clairol Incorporated was negligent, *and also* to prove by a preponderance of the evidence that the defendant, Norma Tonegato, was negligent . . ." (Emphasis ours.) She argues that the "and also" would require that she prove a case against both respondents in order to recover at all.

Even if this instruction might be misleading, taken alone, it could not be misleading when considering the instructions as a whole. The court charged the jury to so regard the instructions. Other instructions made clear that each defendant might be separately liable.

Appellant contends Clairol's *instructions 8 and 9 invade* the province of the jury and are confusing and misleading:

"In the labeling of its product the defendant Clairol Incorporated was subject, among other things, to the provisions of the Food, Drug, and Cosmetic Act of the United States Government.

"This Act provides that a cosmetic shall not be deemed adulterated if the cosmetic is a coal-tar hair dye the label of which bears the following label conspicuously displayed thereon: 'Caution—this product contains ingredients which may cause skin irritation on certain individuals, and a preliminary

test according to accompanying directions should first be made. This product must not be used for dyeing the eyelashes or eyebrows. To do so may cause blindness.' Close quote—and the labeling of which bears adequate directions for such preliminary testing.

"You are instructed that the legend appearing on the label of the 'Miss Clairol' product is identical with the legend referred to in the Act.

"You are also instructed that Section 201(m) of the Act provides that the term 'labeling' means 'all labels and all other written, printed, or graphic matter upon any article or any of its containers or wrappers or accompanying such article.'"

She points to the words "shall not be deemed adulterated" and claims that if this is a standard of care it is for the jury, if not it is merely an abstract principle of law and thus erroneous.

Certainly the adequacy of the labeling of Clairol's product was in issue.  ▇   The testimony established that Clairol's label was identical with that prescribed by the Food, Drug and Cosmetic Act of the United States. These instructions advise the jury of that fact. The language objected to is quoted from the part of the act prescribing labeling and the jury was entitled to know and weigh the provisions of the applicable law in determining the question of Clairol's negligence. While compliance with a provision of law may not establish the exercise of ordinary care it is a factor properly to be considered by the jury.

Instruction 11 submitted by Clairol recites that it has been stipulated to by the parties: "that the labeling and directions on and in the 'Miss Clairol' product are substantially the same as those placed on their product and containers by all other manufacturers of similar products." This did no more than advise the jury of a fact stipulated by the parties.

Appellant contends that by instructing as to degree of care immediately after the above instruction, the court is in effect directing a verdict. This instruction states: "In considering the negligence charged against Clairol Incorporated, you are advised that this defendant is required to exercise only that degree of care as is exercised by a person of ordinary prudence under the same or similar *purposes*. Its duty therefore was to give only such warning, if any is required, as given by a person of ordinary prudence under the same or similar circumstances." Appellant argues that only manufacturers of

similar products had purposes similar to Clairol, thus the instruction sets up a false standard of care. The italicizing of the word "purposes" would seem to indicate an error by the reporter and the use of the word "circumstances" in the following sentence might indicate this word, not "purposes" was actually used by the court. At any rate there could be no prejudicial error as the last sentence correctly states the rule.

Appellant contends that instruction 7 of Clairol is erroneous in that it is a formula instruction.

"It is an admitted fact in this case that the label contained on and the directions with the 'Miss Clairol' preparation directed that a patch test be given before 'Miss Clairol' was applied to the hair. It also is an admitted fact that no such patch test was given to the plaintiff. It is your duty to weigh the effect of the failure to give the patch test to the plaintiff; if you should find that the failure to give the patch test was the sole proximate cause of the plaintiff's injury, then it is your duty to return your verdict in favor of Clairol Incorporated."

■ It cannot be held, as appellant claims, that this instruction avoids any possibility of a verdict against respondent Clairol. Under this instruction the jury must return a verdict for Clairol only if they found that the failure to give the patch test was the "*sole* proximate cause" of appellant's injury. The effect of the instruction is only that Clairol having directed the giving of the test cannot be held liable for an injury solely caused by the failure to give it. ■ Formula instructions are not approved by the courts but the giving of them is not in itself prejudicial error. (*Tice* v. *Pacific Elec. Ry. Co.*, 36 Cal.App.2d 66 [96 P.2d 1022, 97 P.2d 844].) The instruction applies only to liability of Clairol and is a correct statement of law.

■ Appellant cites as error the exclusion of opinion evidence of her witness, Dr. Butler, as to the adequacy of the labeling of the hair coloring preparations. On three occasions the court sustained defense objections to such testimony on the grounds that this was a question for the jury. Assuming such opinion testimony was admissible there was no prejudicial error because this same witness was allowed to testify on cross-examination as to the adequacy of the labeling and the adequacy of the instructions accompanying the product. (*Manney* v. *Housing Authority*, 79 Cal.App.2d 453, 463 [180 P.2d 69].)

■ Appellant cannot complain of the improper use of medical texts. There were no objections or rulings by the court at the time of trial. Appellant cannot urge on appeal the admission of evidence without objection. (3 Cal.Jur.2d, Appeal and Error, § 156, p. 634.)

Judgment affirmed.

Kaufman, P. J., and Draper, J., concurred.