James I. HUNTER, Plaintiff,

v.

E. I. DU PONT de NEMOURS & COMPANY, a corporation, Defendant.

No. 10087.

United States District Court
W. D. Missouri, W. D.

Dec. 3, 1958.

Rogers, Field, Gentry & Jackson, Kansas City, Mo., for plaintiff.

Lathrop, Righter, Blackwell & Parker, Kansas City, Mo., for defendant.

R. JASPER SMITH, District Judge.

This case having come before the Court for hearing on the facts without a jury, the Court, having heard the evidence, and having read and considered the briefs and arguments of counsel, makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S. C.A.:

## Findings of Fact

1. This action was filed in the Circuit Court of Jackson County, Missouri, on November 2, 1955, and was removed to this Court on November 15, 1955. Plaintiff, at the time of the institution of the action and the time of removal, was a citizen and resident of the State of Kansas. At the time of trial he was a citizen and resident of the State of Missouri. Defendant is and at all times referred to herein was a corporation organized and existing under the laws of the State of Delaware. The amount in controversy exceeds the sum of $3,000, exclusive of interest and costs.

2. On July 4, 1955, plaintiff sprayed his lawn at his residence in Leawood, Kansas, with a weed spray manufactured by defendant under the name "DuPont Lawn Weed Killer No. 2."

3. Plaintiff began spraying at 10:30 A.M. and continued until about 6:30 P.M. with only brief interruptions for lunch and for refreshment. He used a major part of a one quart can of defendant's product which he had purchased at a hardware store in Columbus, Ohio.

4. Defendant's product, DuPont Lawn Weed Killer No. 2, is an aqueous solution of the amine salt 2,4–Dichlorophenoxyacetic acid (hereinafter called 2,4–D acid). The concentration of this amine salt in the can of the product which plaintiff purchased and used was 26.7% as is stated on the label.

5. Plaintiff diluted the contents of the can before use by placing three tablespoons of defendant's product in the container of a standard type of spray gun designed for attachment to a garden hose. The concentration of the spray as it issued from the spray gun used by plaintiff was $\frac{1}{10}$ of 1% of the amine salt of 2,4–D acid.

6. The day on which plaintiff sprayed was warm and humid, and plaintiff was dressed only in shorts, socks and shoes. During the time he was spraying, plaintiff's body was more or less continuously enveloped in and in contact with the spray droplets issued from the spray gun.

7. Shortly after he stopped spraying, plaintiff became extremely tired and developed symptoms of chilling, light headedness, nausea, chest pains and a tightness in his throat. Sometime after 10:00 P.M. on July 4, 1955, the family doctor was called to plaintiff's residence. He thought that plaintiff's condition might be extreme fatigue or mild heat exhaustion. He administered a ¾ grain intermuscular injection of either sodium seconal or sodium nembutol, and prescribed additional medication (which plaintiff never did take) and rest.

8. After the doctor's visit, plaintiff's symptoms grew progressively worse, and about midnight he suffered an acute laryngo-spasm resulting in severe oxygen deprivation. Injections of drugs by the doctor, who was recalled by plaintiff's family, and the forced administration of oxygen by the Leawood Fire Department were required to relieve the laryngo-spasm.

9. Plaintiff was hospitalized from the early morning hours of July 5, 1955, until July 9, 1955. He continues at the time of trial to complain of attacks of hoarseness, recurrent light headedness, impairment of his ability to concentrate, extreme fatigue, irritability and a fine tremor of his hands, none of which symptoms occurred before his seizure on July 4, 1955.

10. DuPont Lawn Weed Killer No. 2 carries the following statement on its label:

"Caution

"Avoid contact with eyes, skin and clothing. 2,4–D weed killers may cause skin irritation and should be washed off with soap and water. Do not take internally."

11. Since 1951, DuPont Lawn Weed Killer No. 2 has been registered under the Federal Insecticide, Fungicide, and Rodenticide Act (Title 7 U.S.C.A. §§ 135–135k) and the label and caution statement quoted above have been accepted by the Secretary of Agriculture

under the regulations issued pursuant to that Act (7 Code Fed.Reg., Chap. III, Part 362, Sections 362–362.118).

12. Weed killers made from 2,4–D acid and its various compounds were first marketed in 1945. Since that time some 250 million pounds of 2,4–D herbicides have been sold.

13. Defendant made extensive investigations to determine the toxicity to human beings of products containing 2,4–D acid and its various compounds. These efforts included studies of scientific literature reporting toxicity tests made by others, performance of a series of animal toxicity tests in its own laboratories, observation of the effects of varying concentrations of 2,4–D compounds on its own employees who were conducting field experiments with herbicides, and studies of reports of field testing by other users.

14. There is no evidence that a human being has ever suffered any injury from exposure to the amine salt of 2,4–D acid or its compounds.

15. Defendant exercised due care in determining that the amine salt of 2,4–D acid and its compounds are not inherently dangerous to human life or health.

16. DuPont Lawn Weed Killer No. 2, when used in accordance with the directions on defendant's label, and under the actual circumstances of its use by plaintiff, is not inherently dangerous to human life or health, either from skin absorption or inhalation.

17. The caution statement on the label of DuPont Lawn Weed Killer No. 2 was an adequate warning of any possible danger to the health of persons using the product.

### Conclusions of Law

1. This Court has jurisdiction of this case under 28 U.S.C.A. § 1332, by reason of the diversity of citizenship between the parties and the amount in controversy. The case was properly removed to this Court pursuant to 28 U.S. C.A. § 1441.

2. Plaintiff, having submitted the case for decision upon a theory of negligence, can recover only if (a) defendant's product is inherently dangerous to human life or health when used as directed or as defendant could reasonably contemplate it would be used; and (b) defendant negligently failed to give adequate warning of such danger.

3. Defendant's product, DuPont Lawn Weed Killer No. 2, is not inherently dangerous to human life or health.

4. The caution statement on the label of defendant's product was an adequate warning of any hazard to human life or health which might result from the use of the product, and defendant was not negligent in failing to place any additional or further warning on its label.

5. It is directed that judgment be entered for defendant, with costs.