George W. BURCH, Individually and as father and next friend of Elena Burch, a minor, and William Burch, a minor, and Susan Burch, Appellants,

v.

AMSTERDAM CORPORATION, a Foreign Corporation, and The Syracuse Adhesives Company, a Foreign Corporation, Appellees.

No. 9774.

District of Columbia Court of Appeals.

Argued March 10, 1976.

Decided Dec. 1, 1976.

Irwin H. Liptz, Washington, D. C., with whom Armand I. Robinson, Washington, D. C., was on the brief, for appellants.

Curtis E. von Kann, Washington, D. C., with whom A. Roy DeCaro, F. Wainwright Barnes and Philip F. Herrick, Washington, D. C., were on the brief, for appellees.

Before FICKLING and MACK, Associate Judges, and REILLY, Chief Judge, Retired.

MACK, Associate Judge:

Appellants George and Susan Burch brought this action to recover damages for personal injuries sustained by Mr. Burch in an explosion and flash fire that occurred while he was applying a floor tile adhesive sold to Mrs. Burch by appellee Amsterdam Corporation. A third-party complaint was filed against appellee Syracuse Adhesives Company, the manufacturer of the product. Appellants primarily alleged that Amsterdam negligently failed to provide adequate warnings on the label affixed to the can of adhesive and failed to comply with the labeling requirements of the Federal Hazardous Substances Act, 15

U.S.C. § 1261 *et seq.* (1970). The trial court, after determining that the label satisfied applicable federal standards, granted Amsterdam's motion for summary judgment. We reverse.

### I.

■ Viewed in the light most favorable to appellants,[1] the record reveals the following facts. On March 11, 1972, Mrs. Burch visited Amsterdam's retail store in the District of Columbia to purchase materials for the installation of a tile floor. She informed a salesman at the store that her husband planned to install floor tiles in the kitchen of their home and that she needed all the materials and equipment required for the project. The salesman selected a number of items, which she purchased. Among these was a large can of VICO–102, a floor tile adhesive.

On the next day, Sunday, March 12, 1972, George Burch began the planned project. He had assisted in laying floor tiles only once before. Therefore, before using the VICO–102 adhesive, he carefully read the instructions on the label of the can, which stated that the mixture was flammable, should not be used "near fire or flame," and required "adequate ventilation." In order to provide more ventilation, he opened windows in the kitchen-dining room area and turned on ductal fans and a large air conditioner. Although he checked the area to make sure there were no flames, he did not think of extinguishing the pilot light in the gas stove.

Mr. Burch followed the instructions on the label and began applying a first coat of adhesive to the kitchen floor. Approximately fifteen to twenty minutes later, he had just covered the edge of the floor by the stove when he heard, subliminally, a noise—a "whoosh." He had a sense of time being elongated, felt searing heat and saw the skin peeling from his body. Mrs. Burch, hearing her husband scream, ran into the kitchen to find the room on fire. Mr. Burch suffered serious burns which necessitated immediate trauma treatment, and extended hospitalization and convalescence (to the detriment of his minor children and wife). The explosion generated such pressure as to break a window in the nearby children's room and the heat was so intense as to melt pewter.

The product being used by Mr. Burch is an extremely flammable mastic adhesive with a flash point at or below twenty degrees Fahrenheit. It is a putty-like substance and it also emits a vapor which readily ignites. It was manufactured by Syracuse and sold to Amsterdam pursuant to a "private label account." Under this arrangement, Amsterdam provided the label and distributed the product under the name of VICO–102. The actual labels were printed and sent by Amsterdam to the Syracuse factory where they were affixed to the cans of adhesive.

In January 1974, appellants filed a complaint alleging that Amsterdam was negligent in labeling the adhesive. Specifically, the complaint stated that Amsterdam negligently "failed through proper labeling to warn the plaintiffs of the hazards to be incurred in the use of such product"; failed to comply with the labeling requirements of the Federal Hazardous Substances Act; and willfully attempted to mislead appellants through use of a withdrawn commercial standard.[2] Amsterdam, in turn, filed

---

1. The party opposing a summary judgment is entitled to the benefit of all favorable inferences that may be drawn from the evidentiary materials. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ; *Bouchard v. Washington*, 168 U.S.App.D.C. 402, 514 F.2d 824, 827 (1975). *See also Security Nat'l Bank v. Lish*, D.C.App., 311 A.2d 833, 834 n. 2

(1973) ; *Malcolm Price, Inc. v. Sloane*, D.C. App., 308 A.2d 779, 780 (1973).

2. The VICO–102 label contained a hallmark symbol with the words "Conforms to Commercial Standard CS 181–52." The industry standard, which established certain requirements for adhesives, was replaced in 1971 with a new hallmark and commercial stand-

a third-party complaint alleging that since Syracuse manufactured and labeled the product, it was liable for "any negligence, breach of warranty, and/or violation of Federal regulations." In January 1975, Amsterdam filed a motion for summary judgment claiming that it was entitled to judgment as a matter of law because the label met the requirements of the Federal Hazardous Substances Act and because a federal regulation with more stringent requirements was inapplicable. Appellants responded to the motion in two ways: they filed an opposition, primarily arguing that the applicability of the federal regulation turned on questions of fact; and they also filed a motion to amend the complaint by adding Syracuse as a party defendant and by including causes of action based upon strict liability and breach of warranty.

It was undisputed that VICO–102 is a mastic adhesive and is "extremely flammable" and a "hazardous substance" within the meaning of the Federal Hazardous Substances Act,[3] which prescribes precautionary labeling requirements for certain products used in the household.[4]

The label on the can purchased by appellants provided the following warnings:

DANGER! EXTREMELY FLAMMABLE:

See Cautions elsewhere on label.

CAUTION: FLAMMABLE MIXTURE. DO NOT USE NEAR FIRE OR FLAME N.Y.F.D.C. of A. No. 2381

USE WITH ADEQUATE VENTILATION

MAY BE HARMFUL OR FATAL IF SWALLOWED—DO NOT INDUCE VOMITING, CALL PHYSICIAN— KEEP AWAY FROM CHILDREN

Appellants apparently conceded that the warnings satisfied the minimum standards of the Act. They argued instead that the label was insufficient under a regulation establishing special requirements for "contact adhesive and similar liquid or semi-liquid articles." 16 C.F.R. § 1500.133 (1970). Among other things, the regulation required a specific warning to extinguish all pilot lights.[5]

---

ard containing different technical requirements. The trial court found that Mrs. Burch placed no reliance on the hallmark in purchasing VICO–102, and appellants do not contest this ruling on appeal.

3. 15 U.S.C. §§ 1261(f), 1261(*l*) (1970).

4. The Act requires that labels conspicuously state:
(A) the name and place of business of the manufacturer, packer, distributor or seller; (B) the common or usual name or the chemical name (if there be no common or usual name) of the hazardous substance or of each component which contributes substantially to its hazard, unless the Secretary by regulation permits or requires the use of a recognized generic name; (C) the signal word "DANGER" on substances which are extremely flammable, corrosive, or highly toxic; (D) the signal word "WARNING" or "CAUTION" on all other hazardous substances; (E) an affirmative statement of the principal hazard or hazards, such as "Flammable", "Combustible", "Vapor Harmful", "Causes Burns", "Absorbed

Through Skin", or similar wording descriptive of the hazard; (F) precautionary measures describing the action to be followed or avoided, except when modified by regulation of the Secretary pursuant to section 1262 of this title; (G) instruction, when necessary or appropriate, for first-aid treatment; (H) the word "poison" for any hazardous substance which is defined as "highly toxic" by subsection (h) of this section; (I) instructions for handling and storage of packages which require special care in handling or storage; and (J) the statement (i) "Keep out of the reach of children" or its practical equivalent, or, (ii) if the article is intended for use by children and is not a banned hazardous substance, adequate directions for the protection of children from the hazard . . . . [15 U.S.C. § 1261(p)(1) (1970).]

5. The regulation states, in pertinent part:
(b) The following warning statement is considered to be the minimum cautionary labeling adequate . . . with respect to containers of more than one-half pint of contact adhesive and similar liquid or semi-

Both parties, in their arguments before the trial court, concentrated on the issue of whether mastic adhesive was "semi-liquid" and "similar" to contact adhesive. Thus, the trial court determined that the only issue present in the case involved the interpretation of the federal regulation, which was a question of law. It ruled that the regulation was not intended to cover mastic adhesives and that since Amsterdam had complied with the requirements of the Federal Hazardous Substances Act, it was entitled to judgment as a matter of law. Appellants' motion to amend the complaint was denied in view of the summary judgment.

II.

Appellants present a number of arguments on appeal, one of which is that the adequacy of the warning on the VICO–102 label is a genuine issue of material fact which precluded entry of summary judgment. Specifically, they contend that the Federal Hazardous Substances Act establishes only the minimum standards required of a seller or a manufacturer of a product; and that even if the VICO–102 label satisfied all applicable federal requirements, the warning was not adequate as a matter of law.

Before discussing the merits of this argument, we must first address appellees' contention that entry of summary judgment was proper because the trial court

correctly ruled on the issues framed by the summary judgment papers. The complaint clearly stated a cause of action for negligence based on (1) failure to provide adequate warnings on the VICO–102 label and (2) failure to comply with the labeling requirements of the Federal Hazardous Substances Act. In its motion for summary judgment, Amsterdam addressed only the latter point, apparently assuming that compliance with the federal requirements precluded a finding of negligence.[6] Appellants did not clearly articulate their disagreement with this assumption in their opposition to the motion,[7] although at the hearing their counsel frequently referred to the federal regulations as "minimum standards." The trial court, after expressly recognizing that this is a negligence action, stated, "It may be that the standards set forth under the Federal Hazardous Substances Act are not adequate to protect the public in the use of flammable or dangerous commodities. It is not the function of the Court to set such standards but merely to interpret such standards as set forth by the experts."

In reviewing the propriety of a summary judgment, we must determine whether there was any issue of fact pertinent to the ruling and also whether the substantive law was correctly applied.[8] A summary judgment is properly granted only where the pleadings and other materials on file demonstrate that no genuine is-

---

liquid articles having a flash point at or below 20° F. . . .
DANGER
EXTREMELY FLAMMABLE
VAPORS MAY CAUSE FLASH FIRE
Vapors may ignite explosively. Prevent buildup of vapors—open all windows and doors—use only with cross-ventilation. Keep away from heat, sparks, and open flame. Do not smoke, extinguish all flames and pilot lights, and turn off stoves, heaters, electric motors, and other sources of ignition during the use and until all vapors are gone. Close container after use. Keep out of reach of children. [16 C.F.R. § 1500.133(b) (1970).]

6. Amsterdam stated in its summary judgment papers, "It is probably impossible to find or even to compose a label which more closely follows the Act. Wherein has Amsterdam been negligent?"

7. Appellants claimed that there was a genuine issue of material fact as to whether Amsterdam "falsely" labeled its product.

8. *Bloomgarden v. Coyer*, 156 U.S.App.D.C. 109, 114, 479 F.2d 201, 206 (1973). *See also Security Nat'l Bank v. Lish, supra* note *Brennan v. Shepherd Park Pharmacy, Inc.*, D.C.Mun.App., 138 A.2d 494 (1958) ; *Morgan v. Garris*, 113 U.S.App.D.C. 222, 307 F.2d 179 (1962) ; *Wyant v. Crittenden*, 72 App.D.C. 163, 113 F.2d 170 (1940).

sue of fact remains for trial and that the moving party is entitled to judgment as a matter of law.[9] Furthermore, it is the movant's burden to demonstrate the absence of any factual issue [10] and also to show its entitlement to a favorable determination under applicable principles of substantive law.[11] If the movant does not meet its initial burden, summary judgment must be denied even where the opponent comes forth with nothing.[12] Thus, in the case at hand, it was Amsterdam's obligation to show that summary judgment in its favor was warranted under applicable legal principles. If the substantive law was incorrectly applied and there remains an issue of fact to be tried, the summary judgment must be reversed.

▮ Under common law, a seller has a duty to give adequate warnings of the hazards involved in the use of a product and instructions for its safe use if he knows or has reason to know that the product is likely to be dangerous. *Edwards v. Mazor*

*Masterpieces, Inc.*, 111 U.S.App.D.C. 202, 295 F.2d 547 (1961); W. Prosser, The Law of Torts § 96 (4th ed. 1971); Restatement (Second) of Torts § 388 (1965).[13] The gravamen of appellants' negligence claim was that the VICO–102 label did not contain adequate warnings and precautionary instructions, particularly with respect to use of the product near pilot lights. We assume, without deciding, that the trial court was correct in ruling that the label provided all the warnings and directions required by the Federal Hazardous Substances Act and appropriate regulations.[14] The central issue presented in this case is whether compliance with the statute precluded a finding that Amsterdam was negligent in failing to give additional warnings.

▮ The Federal Hazardous Substances Act prohibits the sale in interstate commerce of a hazardous substance without a label containing certain information, including specific warnings and instructions

9. Super.Ct.Civ.R. 56(c); *Malcolm Price, Inc. v. Sloane supra* note 1, at 780; *Yates v. District Credit Clothing, Inc.*, D.C.App., 241 A.2d 596, 598 (1968).

10. *Adickes v. S. H. Kress & Co., supra* note 1, 398 U.S. at 157, 90 S.Ct. 1598; *Yates v. District Credit Clothing, Inc., supra* note 9; *Bouchard v. Washington, supra* note 1, at 827; *Nyhus v. Travel Management Corp.*, 151 U.S.App.D.C. 269, 271, 466 F.2d 440, 442 (1972).

11. *Bloomgarden v. Coyer, supra* note 8, at 115, 479 F.2d at 207; *Nyhus v. Travel Management Corp., supra* note 10. *See also Wyant v. Crittenden, supra* note 8.

12. *Adickes v. S. H. Kress & Co., supra* note 1, 398 U.S. at 160, 90 S.Ct. 1598; *Bloomgarden v. Coyer, supra* note 8, at 115, 479 F.2d at 207; *Levin v. Joint Comm'n on Accreditation of Hosps.*, 122 U.S.App.D.C. 383, 386, 354 F.2d 515, 518 (1965).

13. The Restatement states:
    One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in

the manner for which and by a person for whose use it is supplied, if the supplier
    (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
    (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
    (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.
    [Restatement (Second) of Torts § 388 (1965).]
*See generally* Kidwell, *The Duty to Warn: A Description of the Model of Decision*, 53 Tex.L.Rev. 1375 (1975); Noel, *Products Defective Because of Inadequate Directions or Warnings*, 23 Sw.L.J. 256 (1969).

14. In view of our disposition of this case, we need not consider appellants' claims with respect to applicability of the regulation for contact adhesives. We note that the Act itself requires a statement of "precautionary measures describing the action to be followed or avoided," which may have included more specific directions as to pilot lights. 15 U.S.C.A. § 1261(p)(1)(F) (1970). However, since appellants have not raised this point, we assume that the statutory requirements were satisfied.

on use of the product. 15 U.S.C. §§ 1261, 1263 (1970). The Act provides criminal penalties and other sanctions for violation of the labeling requirements. *Id.* §§ 1264, 1265, 1267. The express purpose of the legislation was to protect consumers from dangers inherent in the use of common household products. S.Rep.No.1158, 86th Cong., 2d Sess. (1960); H.R.Rep.No.1861, 86th Cong., 2d Sess. (1960), U.S.Code Cong. & Admin.News 1960, p. 2833. We are aware of nothing in the statute itself or the legislative history which implies that Congress intended to limit a seller's common law "duty to warn." Rather, the inherent legislative policy was to provide to consumers a greater degree of protection than was provided by common law remedies. *See Hill v. Husky Briquetting, Inc.,* 54 Mich.App. 17, 20–21, 220 N.W.2d 137, 139, *aff'd,* 393 Mich. 136, 223 N.W.2d 290 (1974). *See also Raymond v. Riegel Textile Corp.,* 484 F.2d 1025, 1027 (1st Cir. 1973).

As general rule, a standard established by a criminal statute "is no more than a minimum, and it does not necessarily preclude a finding that the actor was negligent in failing to take additional precautions." Prosser, *supra* § 36 at 203. *See* Restatement, *supra* § 288C.[15] However, if there is a situation "clearly identical with that contemplated by the statute . . . and no special circumstances are involved, it may be found, and can be ruled as a matter of law that the actor has done his

full duty by complying with the statute." Prosser, *supra* § 36 at 203–04.[16] Appellees contend that the Federal Hazardous Substances Act provides the only specific standard of proper labeling, and that since there were no special circumstances which required warnings beyond those prescribed by the statute, compliance with the Act established due care as a matter of law. We find this argument unpersuasive.

The Federal Hazardous Substances Act was enacted to improve warnings on the labels of over 300,000 common household products. S.Rep.No.1158, *supra* at 1. Many of these hazardous products may involve special dangers which would require more detailed and specific instructions than the general warnings prescribed by the Act. In light of the extreme flammability of VICO–102, we do not agree that there were no special circumstances here which may have required a higher degree of care.

Moreover, the overwhelming majority of courts presented with similar arguments in product liability cases have held that compliance with federal and state requirements for the manufacture and sale of products does not immunize a manufacturer or seller from liability.[17] In one case, it was held that compliance with the Federal Hazardous Substances Act, in particular, was "not conclusive or controlling in defining defendant's common law liability for failure to warn." *Jonescue v. Jewel Home Shopping Service,* 16 Ill.App.3d 339,

15. The Restatement states:
Compliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions. [Restatement, *supra* § 288C.]

16. The Comment to Restatement § 288C explains that:
Where there are no such special circumstances, the minimum standard prescribed by the legislation or regulation may be accepted by the triers of fact, or by the court as a matter of law, as sufficient for the occasion; but if for any reason a reasonable man would take additional precautions, the

provision does not preclude a finding that the actor should do so.
[*Id.* at 40.]

17. *See* cases cited at note 19, *infra; Raymond v. Riegel Textile Corp.,* 484 F.2d 1025 (1st Cir. 1973); *LaGorga v. Kroger Co.,* 275 F.Supp. 373 (W.D.Pa.1967), *aff'd,* 407 F.2d 671 (3d Cir. 1969); *Sherman v. M. Lowenstein & Sons, Inc.,* 28 A.D.2d 922, 282 N.Y.S. 2d 142 (1967). *See generally* Noel, *Products Defective Because of Inadequate Directions, supra* note 13, at 285–88; L. Frumer & M. Friedman, Products Liability § 8.07[1] (1975).

345, 306 N.E.2d 312, 316 (1973).[18] *See also* L. Frumer & M. Friedman, Products Liability §§ 8.07[1], [2] (1975). In numerous other cases involving similar federal or state statutes, courts have held that mere compliance with regulatory labeling requirements does not preclude a finding that additional warnings should have been given.[19] Thus, the generally accepted rule is that such requirements prescribe only the minimum warnings required of a seller or manufacturer.[20] As one court has stated, the warnings required by federal regulations "may be only minimal in nature and when the manufacturer or supplier knows of, or has reason to know of, greater dangers not included in the warning, its duty to warn may not be fulfilled." *Ste-*

*vens v. Parke, Davis & Company,* 9 Cal.3d 51, 107 Cal.Rptr. 45, 53, 507 P.2d 653, 661 (1973) (en banc). Following this view, we hold that compliance with the Federal Hazardous Substances Act did not preclude a finding that Amsterdam was negligent for failing to supply adequate warnings.

██ ██ In light of our holding, the summary judgment can stand only if the warnings at issue were adequate as a matter of law under ordinary negligence principles. The seller or manufacturer of a product whose use could result in foreseeable harm has a duty to give a warning which adequately advises the user of attendant risks and which provides *specific* directions for safe use.[21] The sufficiency

---

18. In *Jonescue,* a cleaning agent which could cause illness if ingested was classified "nontoxic" and required no warning under the Act. The court reversed a directed verdict for defendant seller, holding that whether the seller had a duty to warn of the possible dangers inherent in the product was a question for the jury.

19. *Hubbard-Hall Chem. Co. v. Silverman,* 340 F.2d 402 (1st Cir. 1965) (label approved by Department of Agriculture pursuant to Federal Insecticide, Fungicide and Rodenticide Act; jury could conclude warning inadequate); *Gonzalez v. Virginia-Carolina Chem. Co.,* 239 F.Supp. 567 (E.D.S.C.1965) (compliance with labeling requirements of the Federal Insecticide, Fungicide and Rodenticide Act and the South Carolina Economic Poison Law did not preclude tort liability); *Stevens v. Parke, Davis & Co.,* 9 Cal.3d 51, 107 Cal. Rptr. 45, 507 P.2d 653 (1973) (en banc) (compliance with warnings required by Food and Drug Administration regulations not sufficient to immunize manufacturer from liability); *Arata v. Tonegato,* 152 Cal.App.2d 837, 314 P.2d 130 (1957) (compliance with labeling requirements of Federal Food, Drug and Cosmetic Act did not preclude finding of negligence); *Hill v. Husky Briquetting, Inc.,* 54 Mich.App. 17, 220 N.W.2d 137, *aff'd,* 393 Mich. 136, 223 N.W.2d 290 (1974) (New York labeling statute established only the minimum standard); *Blasing v. P.R.L. Hardenbergh Co.,* 226 N.W. 2d·110 (Minn.1975) (compliance with federal and local labeling regulations for flammable products did not preclude finding of negligence); *First Nat'l Bank v. Nor-Am Agricultural Prods., Inc.,* 88 N.M. 74, 537 P. 2d 682 (Ct.App.1975) (compliance with label-

ing requirements of Federal Insecticide, Fungicide and Rodenticide Act; summary judgment for defendant reversed); *Maize v. Alantic Ref. Co.,* 352 Pa. 51, 41 A.2d 850 (1945) (label approved by Surgeon General not as a matter of law adequate); *Rumsey v. Freeway Manor Minimax,* 423 S.W.2d 387 (Tex.Civ.App.1968) (warnings which satisfied requirements of Federal Insecticide, Fungicide and Rodenticide Act and Texas Hazardous Substances Act not necessarily sufficient).

One of the two cases involving statutory labeling requirements relied upon by appellees was a decision by the trial court finding that the warnings provided were adequate as a matter of fact. *See Hunter v. E. I. DuPont de Nemours & Co.,* 170 F.Supp. 352 (W.D.Mo.1958) (compliance with Federal Insecticide, Fungicide and Rodenticide Act). The other case was reversed on appeal on the ground that compliance with the requirement was not determinative of the issue of liability. *Bloom v. Gimbel Bros., Inc.,* 147 N.Y.S.2d 843 (Sup.Ct.1955), *rev'd,* 10 A.D.2d 695, 198 N.Y.S.2d 52 (1960) (compliance with New York City Administrative Code).

20. While statutory requirements do not establish the standard of care, compliance with a statute is some evidence that due care was exercised. *Arata v. Tonegato, supra* note 19; *Sherman v. M. Lowenstein & Sons, Inc., supra* note 17; *Rumsey v. Freeway Manor Minimax, supra* note 19.

21. *Buffington v. Amchem Prods., Inc.,* 489 F.2d 1053, 1055 (8th Cir. 1974); *Boyl v. California Chem. Co.,* 221 F.Supp. 669, 674–75 (D.Or.1963); *First Nat'l Bank v. Nor-Am. Agricultural Prods., Inc., supra* note 19,

of a particular warning is ordinarily a question for the jury.[22]

The particular hazard encountered by appellants in using VICO–102 was that fumes or vapors from the product could ignite on contact with a pilot light, resulting in a violent fire or explosion. The pertinent cautionary statements on the VICO–102 label were: "DANGER! EX- TREMELY FLAMMABLE . . . CAUTION: FLAMMABLE MIXTURE. DO NOT USE NEAR FIRE OR FLAME . . . 'USE WITH ADEQUATE VENTILATION.' "[23] Given the potential for serious injury,[24] we cannot say as a matter of law that this warning adequately alerted users of the dangers inherent in the product.[25] Among other things, an ordi-

---

88 N.M. at 83, 537 P.2d at 691–92; 2 F. Harper & F. James, The Law of Torts § 28.7 at 1547–48 (1956). *See also* Noel, *Products Defective Because of Inadequate Directions, supra* note 13, at 283–84.

22. *Spruill v. Boyle-Midway, Inc.*, 308 F. 2d 79, 86 (4th Cir. 1962); *Simonetti v. Rinshed-Mason Co.*, 41 Mich.App. 446, 200 N.W.2d 354 (1972); *First Nat'l Bank v. Nor-Am. Agricultural Prods., Inc., supra* note 19, 537 P.2d at 691; Noel, *Products Defective Because of Inadequate Directions, supra* note 13, at 283.

23. Appellees, relying on evidence of four other mastic adhesive labels, argue that the warnings on the VICO–102 label conformed with the custom of the industry. Assuming appellees established conformance with the industry practice, such evidence is relevant but not conclusive in assessing whether reasonable care was exercised. "Even an entire industry . . . cannot be permitted to set its own uncontrolled standard." Prosser, *supra* § 33 at 167; *accord, LaGorga v. Kroger Co., supra* note 17, at 379; *Hill v. Husky Briquetting, Inc., supra* note 19; *Maize v. Atlantic Ref. Co., supra* note 19.

We note that appellee Syracuse also manufactures another mastic adhesive, SAC–2, which is made according to the same formula as VICO–102, but is sold under Syracuse's own label. The SAC–2 label provides a specific warning to extinguish pilot lights.

24. The degree of danger involved is a factor in determining the specificity required in a warning. *See Griggs v. Firestone Tire & Rubber Co.*, 513 F.2d 851, 858 (8th Cir. 1975); *Boyl v. California Chem. Co., supra* note 21, at 675 n. 5(b); *Maize v. Atlantic Ref. Co., supra* note 19, 352 Pa. at 56–58, 41 A.2d at 853. *See also* Kidwell, *The Duty to Warn, supra* note 13, at 1392–93, 1395.

25. *See Jackson v. Coast Paint and Lacquer Co.*, 499 F.2d 809 (9th Cir. 1974) (ignition of paint fumes from static electricity or broken light bulb; sufficiency of warning "Keep away from heat, sparks, and open flames. USE WITH ADEQUATE VEN- TILATION" was a question of fact); *Tucson Indus. v. Schwartz*, 108 Ariz. 464, 501 P.2d 936 (1972) (en banc) (warning inadequate to indicate that fumes from contact cement could cause blindness; label stated "DANGER . . . Use with adequate ventilation. Keep container closed VAPORS HARMFUL. TOXIC. . . ."); *Crane v. Sears Roebuck & Co.*, 218 Cal.App. 2d 855, 32 Cal.Rptr. 754 (1963) (adequacy of warning a question for the jury where fumes from surface preparer exploded on contact with pilot light; label stated "CAUTION: INFLAMMABLE MIXTURE. Do not use near fire or flame . . . BEWARE OF POISONOUS FUMES."); *Simonetti v. Rinshed-Mason Co., supra* note 22 (sufficiency of warning a question of fact where residue and vapor from paint thinner could explode hours after use; label stated "Keep AWAY from FIRE, HEAT and OPEN-flame LIGHTS. CAUTION . . . ."); *Blasing v. P.R.L. Hardenbergh Co., supra* note 19 (vapors from furniture finish remover ignited on contact with pilot light; adequacy of warning to "Keep AWAY from FIRE, HEAT and OPEN-flame LIGHTS" could not be determined as a matter of law).

*See also* the following cases in which the adequacy of the particular warning was held to be a question of fact: *Hubbard-Hall Chem. Co. v. Silverman, supra* note 19 (failure to place skull and cross bones or comparable symbol on insecticide); *Edwards v. Mazor Masterpieces, Inc.*, 111 U.S.D.C. App. 202, 295 F.2d 547 (1961) (instructions on opening and closing sofa bed); *Bean v. Ross Mfg. Co.*, 344 S.W.2d 18 (Mo.1961) (no express warning that drain solvent exploded when mixed with water); *Haberly v. Reardon Co.*, 319 S.W.2d 859 (Mo.1958) (no warning that cement paint could cause blindness); *Rumsey v. Freeway Manor Minimax, supra* note 19 (failure to warn that there was no antidote for a roach poison); *cf. Boyl v. California Chem. Co., supra* note 21 (label on weed killer held inadequate where no warning of harmful effects or residue). *But see Stief v. J. A. Sexauer Mfg. Co.*, 380 F.2d 453 (2d Cir.), *cert. denied*, 389 U.S. 897, 88

nary user might well not have realized that "near fire or flame" included nearby pilot lights or that fumes and vapors, as well as the adhesive itself, were extremely flammable. Whether more specific instructions or warnings were required is a question of fact for the jury.

Accordingly, the summary judgment is reversed. Since leave to amend the complaint was denied solely on the basis of the summary judgment, the order denying appellants' motion is also reversed, and the case is remanded to the trial court with instructions to reconsider the motion to amend.

*Reversed and remanded.*

REILLY, Chief Judge, Retired (dissenting):

Although the majority opinion seems to concede—as I think we must—that the trial court correctly found as a matter of law that the warning label here satisfied the elaborate regulations with respect to mastic adhesives promulgated under the Federal Hazardous Substances Act—it disapproves the order of summary judgment on the ground that whether or not the label was adequate presented a question of · negligence which should have been submitted to a jury. It relies upon an impressive array of authorities from other jurisdictions for the proposition that regulations under safe-

ty products acts set only minimum standards, and consequently compliance with such requirements does not relieve manufacturers or dealers in dangerous substances from the burden of including adequate warnings.

I have no quarrel with this thesis provided that it means that where a manufacturer, knowing the properties of the substance, can reasonably foresee hazards to a user which are not covered by the statutory requirements he is under a duty to add more cautionary instructions. Unless the rule is so qualified, it does violence to the law of torts by transforming liability for negligence on the part of manufacturers to one of absolute liability to a consumer.

It is well settled that the construction of the wording in a written document, like a will or a contract, is a matter reserved for judicial determination, and I see no reason why the wording of a warning label should be deemed an exception to this principle. Hence we should affirm the challenged ruling unless we are of the view that the warning on the container identifying the product as "EXTREMELY FLAMMABLE", and directing that it not be used "NEAR FIRE OR FLAME" would lull a customer into thinking it was safe to empty the contents of the container on the floor adjacent to his gas stove without extinguishing the pilot lights. One would think that even the least sophisticated user

S.Ct. 220, 19 L.Ed.2d 216 (1967) (warning on drain cleaner adequate where specific cause of explosive reaction unknown); *Jamieson v. Woodward & Lothrop*, 101 U.S.App. D.C. 32, 247 F.2d 23 *cert. denied*, 355 U.S. 855, 78 S.Ct. 84, 2 L.Ed.2d 63 (1957) (no warning required where elastic exerciser slipped and struck plaintiff since the danger complained of was obvious).

Appellees rely on two cases in which judgment notwithstanding the verdict was approved in favor of defendant seller/manufacturer where plaintiffs had contested the sufficiency of warnings accompanying an adhesive. *Borowicz v. Chicago Mastic Co.*, 367 F.2d 751 (7th Cir. 1966); *Moschkau v. Sears, Roebuck & Co.*, 282 F.2d 878 (7th Cir. 1960).

Although the facts of those cases are similar to the situation here, plaintiffs in both cases were carpenters with extensive experience in using adhesives. Thus, the decisions were based on plaintiff's contributory negligence as a matter of law (*Moschkau*) and on the principle that there is no duty to warn against a danger which is already known to the plaintiff (*Borowicz*). The cases were distinguished in *Murray v. Wilson Oak Flooring Co., Inc.*, 475 F.2d 129 (7th Cir. 1973), where the court, considering a contributory negligence claim, held that the issue of whether an adhesive label was sufficient to inform an inexperienced user of the attendant risk from pilot lights was a question of fact for the jury.

of household appliances would be aware that pilot lights are designed to ignite gas and thus far more likely than a smoldering cigarette to set ablaze any vapors rising from an "extremely flammable" mixture.

According to plaintiff's version of the facts, he read the instructions on the label of the can and before applying its contents to the floor, saw to it that the kitchen was ventilated by opening the windows and turning on ductal fans and air-conditioning equipment. He did so because another warning on the label read "USE WITH ADEQUATE VENTILATION". Obviously this warning was sufficient to put him on notice of the need for additional air. But why the warning against "USE NEAR FIRE OR FLAME" should not be treated as equally effective in putting customers on notice of the hazard of using the substance near pilot lights is difficult to explain. It would seem to me that a failure to heed either warning was contributory negligence per se.

Apparently my colleagues think that lack of the required degree of care might be inferred from the absence from the label of any specific mention of pilot lights "in light of the extreme flammability" of the product. But as the big lettering on the container described its contents in precisely those terms, I regard this position as untenable. If there was a duty to advert expressly to pilot lights in addition to "fire and flame", it would seem equally incumbent upon the vendors to devise a label warning against lighted pipes, cigars and cigarettes, vigil lights, candles, sparks from an electric lamp switch, a running fan or motor, and the other myriad of things which could possibly ignite vapors. If this is what the law requires, big lettering would have to be discarded for smaller print enumerating details at such length that few users would bother to read it—the warning then lacking the requisite "intensity". See *DiArienzo v. Clairol, Inc.*, 125 N.J.Super. 224, 310 A.2d 106 (1973), where

it was held that a pamphlet of instructions was so detailed that a particular hazard was insufficiently highlighted, and *Palace Laundry Dry Cleaning Co. v. Cole*, D.C. Mun.App., 41 A.2d 231 (1945), holding that plaintiff was under no duty to read fine print (disclaimers of liability on a laundry slip).