**George F. BASON, Jr., Appellant,**

v.

**The AMERICAN UNIVERSITY, Appellee.**

**No. 13653.**

District of Columbia Court of Appeals.

Argued Feb. 26, 1980.

Decided April 24, 1980.

---

Thomas Penfield Jackson, Washington, D. C., for appellant.

Richard W. Galiher, Jr., Washington, D. C., with whom Anthony C. Morella, Washington, D. C., was on brief, for appellee.

Before GALLAGHER, HARRIS and MACK, Associate Judges.

PER CURIAM:

This case comes to us because the defendant's motion for summary judgment was granted. The appellant, a former law faculty member, sued American University for breach of his employment contract. He strenuously asserts that genuine issues of material fact remain, making disposition by summary judgment improper. We agree.

In reviewing the award of summary judgment, we must examine the record in the light most favorable to Bason, the nonmoving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Burch v. Amsterdam Corp.*, D.C. App., 366 A.2d 1079 (1976).

Appellant was first hired as an assistant professor of law in 1966. At that time he entered into a standard one-year contract. The parties agree that both this and all ensuing contracts incorporated the *Manual of Information and Procedures*, "Fulltime Faculty Personnel Policies" (*Faculty Manual*). Because Bason was hired as an untenured teacher, the first six years of his employment were to be a time for assessment of his potential for appointment to a tenured position. An untenured teacher's employment contract expired annually unless renewed. During the fifth year, a final evaluation was to be performed resulting either in a terminal one-year contract, or recommendation of appointment to tenure.

Each of the University's printed forms by which Bason was reappointed included a section entitled "Tenure Status." The University's signatory was to specify the additional years of service required for tenure and any "Other Requirements (be specific)." The *Faculty Manual* also set forth several aspects of the pretenure period upon which Bason relied. 1) It described this period as a time during which "both the faculty member and the University may determine whether or not a permanent association will be mutually advantageous." 2) It stated that responsible University officers "[are expected] . . . to keep each faculty member informed during the period of pretenure service as to whether or not a recommendation for an appointment with

tenure will be made at the appropriate time." 3) It specified four general criteria by which faculty members should be evaluated, both for yearly renewal and for tenure: a) educational and professional background; b) quality of teaching; c) professional growth; and d) contributions to the advancement of the objectives of the University.

Appellant's contract was renewed in 1967 and 1968; the 1969 renewal included a promotion to associate professor. All of these reappointments were accompanied by favorable comments regarding his performance. All agree that Bason made significant contributions to the law school during his pretenure service. In the fall of 1970, the Faculty Rank and Tenure Committee met to consider appellant's candidacy for a tenured appointment. The Committee voted not to recommend tenure, but to offer instead a one-year terminal contract. No reasons for this decision were formally communicated to appellant. Informally, Bason said he was told it was because he devoted too much time to clinical work, and had been late in submitting course grades. Upon inquiry, members of the Committee denied that these were the reasons. The Committee met again to allow Bason to plead his case, but did not alter its decision.

After discussions with a few members of the Committee, Bason believed the matter of his tenure would be reconsidered by the faculty the following fall. Accordingly he accepted "under protest" the terminal appointment for the 1971–72 academic year. That fall, the Committee voted not to reconsider the matter of Bason's tenure. His employment with appellee ended June 30, 1972.

In November 1973, Bason commenced this action. His amended complaint charged that American University breached his employment contract (incorporating the *Faculty Manual* and University customs and practices) 1) in that it failed to notify him during his first five years of service of any deficiencies in his performance; 2) that it did not evaluate his tenure candidacy on the basis of the *Faculty Manual's* criteria;

3) that the Faculty Rank and Tenure Committee acted arbitrarily, capriciously and not in good faith in considering his candidacy; and 4) that the Rank and Tenure Committee refused to reconsider the matter, as had been promised. He asserted he had a contract right to be evaluated and informed of his progress towards tenure and that tenure would not be denied arbitrarily or in bad faith; that he relied on the absence of criticism to his detriment; that he had a right to have had the adverse tenure decision reconsidered. In this appeal, Bason states emphatically that he is *not* asserting a contract right to tenure, but rather to be evaluated under the published criteria and given notice of claimed deficiencies. His complaint seeks damages only.

The University argues that it did not in any way violate the applicable rules and regulations in handling Bason's case. Bason had no right to tenure, and he was denied recommendation because of deficiencies in his qualifications and performance. It points to supporting depositions and affidavits by various members of the administration and Rank and Tenure Committee to demonstrate that its decision was not arbitrary or in bad faith; that Bason's performance began to deteriorate in 1969; that this dissatisfaction was communicated to him. It argues that Bason had no contract right to be informed of his progress towards tenure; that the section of the *Faculty Manual* appellant relies on is merely an advisory direction to administrators and deans, creating no contractual right for the faculty member.

In granting summary judgment for the University, the trial court concluded, *inter alia*, that those sections of the *Faculty Manual* relied on by appellant did not constitute binding contractual promises—specifically that he had no contractual right to be kept informed of his progress. In addition, it held that there was no binding promise that his status would be reconsidered.

■■ Our review here is quite limited. "[W]e must determine whether there was any issue of fact pertinent to the ruling and [if not] . . . . whether the substantive

law was correctly applied." *Burch v. Amsterdam Corp., supra* at 1083 (footnote omitted); Super.Ct.Civ.R. 56(c). Even a doubt as to whether a genuine issue exists is sufficient to preclude summary judgment. *Washington Post Co. v. Keogh*, 125 U.S.App.D.C. 32, 34, 365 F.2d 965, 967 (1966).

■ Although the record is extensive, the issues are not very well defined in this case—a case that has been in progress for over six years. As we interpret the record, the fundamental issue is whether Bason had a contractual right to be evaluated and kept informed of his progress toward tenure. The answer to that question requires resort to the actual employment contract, those documents expressly incorporated into it (the *Faculty Manual*, the *Bylaws of the Association of American Law Schools*, and the "Standards and Rules of Procedures," *Approval of Law Schools*, American Bar Association) and the customs and practices of the University. *Pride v. Howard University*, D.C.App., 384 A.2d 31, 35 (1978); *Greene v. Howard University*, 134 U.S.App. D.C. 81, 86 n.4, 412 F.2d 1128, 1133 n.4 (1969) (the usual practices of a university surrounding a contractual relationship can themselves be raised to the level of a contractual obligation). If such a right is found to exist, the next matter is whether Bason was in fact evaluated and kept informed. If he was not, the amount of appropriate damages would still be at issue. The record reflects other issues (such as whether he was promised reconsideration, or whether the action by the Rank and Tenure Committee was arbitrary) but based on the arguments raised on appeal, the former issues appear to be the primary ones.

The trial court summarily concluded that Bason had no such contractual right. But this is the essence of the conflict. We think, on this record, this was properly a matter for the jury to decide. Bason contended that the printed contract, *Faculty Manual*, and University customs and practices conferred a right to be kept informed on progress towards tenure, including notification of deficiencies. He supported this argument by reference to the *Manual* sections that state 1) the responsible officer "is expected" to so inform; and 2) the fact that the pretenure period is for a "mutual" assessment of the desirability of tenure. He also relies on the inclusion of the "Tenure Status" section in the contract itself. Construing matters most favorably for appellant, we think his employment contract is reasonably susceptible to this construction. Accordingly, he has a right to present it to a jury. *Howard University v. Durham*, D.C.App., 408 A.2d 1216, 1219 (1979); *International Brotherhood of Painters & Allied Trades v. Hartford Accident & Indemnity Co.*, D.C.App., 388 A.2d 36, 42 (1978).

Moreover, resolution of the matter involves not only a consideration of the *Faculty Manual*, but of the University's "customs and practices." Appellant alleged that the candidacies for tenure of other faculty members were treated differently. The existence of an issue of custom and practice also precludes summary judgment. *1901 Wyoming Avenue Cooperative Association v. Lee*, D.C.App., 345 A.2d 456 (1975).

Finally, the record contains ample evidence of a factual controversy over whether Bason was actually informed of deficiencies. Both parties have argued at length the facts of their respective positions here, with numerous references to documentary support in the record. On this matter, too, a genuine issue exists.

We need not continue further recitation of the details of the controversy which the parties have here disputed at length. The vigor of their appellate arguments speaks plainly to the existence of at least one genuine issue of material fact. Disposition of appellant's claim by summary judgment was improper. Accordingly, the judgment is reversed and the case remanded.

*So ordered.*